UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

PETER MCARDLE,

                 Plaintiff,

        -against-

JOSEPH PONTE, *et al.*,

                 Defendants.

17cv2806

OPINION & ORDER

------------------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Peter McArdle brings this federal civil rights action against the City of New York (the "City") and various New York City Department of Correction ("DOC") officials and officers. He challenges his conditions of confinement and also alleges excessive force claims arising out of his pre-trial detention. Defendants move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6). For the reasons that follow, Defendants' motion is granted.

BACKGROUND

        The allegations in the Second Amended Complaint are presumed true for purposes of this motion. Between January 4 and March 9, 2017, McArdle was a pre-trial detainee housed on Rikers Island and transported on multiple occasions for court appearances to the Kings County Courthouse. He alleges, among other things, that he was forced to sleep on a concrete floor without adequate bedding, housed in overcrowded and unsanitary holding cells, and deprived of adequate food and water. (Complaint, ECF No. 30 ("Compl."), ¶¶ 104–140.)

        McArdle's excessive force claims stem from two separate incidents in January 2017 when correction personnel deployed chemical "pepper spray" to de-escalate prisoner

conflicts. (Compl. ¶¶ 141–199.) In both instances, McArdle was an innocent bystander in the vicinity where pepper spray was deployed. McArdle asserts that correction officers did not provide medical assistance even though he experienced temporary vision loss, respiratory difficulties, and skin irritation. (Compl. ¶¶ 173–179.) McArdle further claims that these alleged civil rights violations stem from the "customs, policies and practices" of the City of New York. (Compl. ¶ 282.)

On January 23, 2017, McArdle filed grievances for both chemical spray incidents, as well as "forced standing," through the DOC Inmate Grievance and Request Program ("IGRP"). (Compl. ¶ 201.) On January 30, 2017, after receiving no response, McArdle appealed to the IGRP Committee. (Compl. ¶ 205.) When he received no response to that request, he appealed directly to the DOC Central Office Review Committee ("CORC"). (Compl. ¶ 207.) Thereafter, he filed this action pro se. Prior to the initial pre-trial conference, McArdle retained counsel. At that conference, this Court discussed certain deficiencies in the Complaint and McArdle elected to file an amended complaint. (ECF No. 15.) After the amended complaint was interposed, Defendants requested a pre-motion conference and submitted a letter describing why the amended pleading was insufficient to state a claim. (ECF No. 25.) Following a conference with the parties, McArdle was afforded one more opportunity to amend his complaint. (ECF No. 29.) On January 17, 2018, McArdle filed a Second Amended Complaint. (ECF No. 30.)

LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must construe all inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

DISCUSSION

This Court groups McArdle's grievances into the following categories: (1) conditions of confinement claims against individuals; (2) excessive force claims against individuals; (3) Monell claims; and (4) common law tort claims.

I. Conditions of Confinement Claims

A. Exhaustion of Administrative Remedies

To establish individual liability under 42 U.S.C. § 1983, the challenged conduct must have "(1) been performed by a person acting under the color of state law [and] . . . (2) deprived the plaintiff of his rights, privileges or immunities under the Constitution or the laws of the United States." Holmes v. City of New York, 2018 WL 4211311, at *3 (S.D.N.Y. Sept. 4, 2018) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." Darnell v. Piniero, 849 F.3d 17, 29 (2d Cir. 2017).

Defendants argue that McArdle did not exhaust his available administrative remedies before bringing a § 1983 claim concerning the conditions of his confinement, as required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (citation omitted). Although Defendants bear the responsibility to plead this affirmative

defense, Jones v. Bock, 549 U.S. 199, 216 (2007), a court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement," Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).

The exhaustion requirement is mandatory, but a court may excuse the plaintiff's failure to exhaust when administrative remedies were "unavailable." Ross v. Blake, 136 S. Ct. 1850, 1856, 1859 (2016). Administrative procedures are "unavailable" when they are "not capable of use to obtain relief," despite being "officially on the books." Ross, 136 S. Ct. at 1859. The Supreme Court enumerated three scenarios where unavailability may stymie exhaustion of remedies. First, administrative procedures are unavailable when they "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 136 S. Ct. at 1859. Second, administrative procedures are unavailable where they are "so opaque that [they] become[], practically speaking, incapable of use," making them effectively "unknowable" to the ordinary prisoner. Ross, 136 S. Ct. at 1859. Third, administrative procedures are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860. In applying Ross, the Second Circuit has found remedies unavailable where procedures were incomprehensible for inmates transferring between facilities, Williams, 829 F.3d at 124, or where correction officers ignored their obligation to process grievances, Medina v. Napoli, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order).

To meet the PLRA exhaustion requirement, an inmate must take "all steps that the [prison grievance process] holds out, and do[] so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Here, the relevant process is the four-step IGRP procedure. In the first step, an inmate

4

submits a grievance to IGRP using the IGRP Statement Form. IGRP then has five business days to resolve the matter informally. The City of New York Dept. of Corr., Directive 3376, II(F) (Mar. 13, 2018). At the second step, an inmate may "appeal . . . IGRP's informal resolution . . . and request a formal hearing before the Inmate Grievance Resolution Committee." DOC Directive 3376, II(G). The third step in the process allows an inmate to "appeal the . . . Committee's disposition to the facility's Commanding Officer." DOC Directive 3376, II(G). Finally, at the fourth step, an inmate may appeal the commanding officer's decision to the CORC. DOC Directive 3376, II(G). "The CORC's disposition shall constitute the Department's final decision on the inmate's request or grievance." DOC Directive 3376, II(G). Inmates may submit an appeal either through the "IGRP Disposition Form as appropriate" or "through the use of the IGRP Statement Form, noting that the inmate has not received a timely disposition and wishes to appeal to the next stage of the process." DOC Directive 3376, IV(D)(10)(a). "[I]n the event that the inmate does not receive a timely disposition <u>at any stage</u> of the IGRP process, the inmate may submit a request for an appeal (to proceed to the next step of the IGRP process) . . . ." DOC Directive 3376, IV(D)(10)(a) (emphasis added).

It is clear on the face of the Complaint that McArdle did not exhaust the IGRP grievance procedures pertaining to his claims about bedding, food, water, sanitation, and medical care. His grievance submitted on January 23 only refers to "chemical agent" spray in the intake area and "forced standing." (Compl. Ex. A.) He does not complain about any other particular conditions of his confinement beyond general assertions about "life threatening situations." (Compl. Ex. A.) McArdle has pleaded no facts to show that he tried to follow the IGRP system for these issues, and so those claims are dismissed.

5

McArdle's grievances concerning pepper spray and "forced standing" merit further discussion. On January 23, 2017, McArdle completed the first step by submitting a complaint concerning these issues to IGRP. When he received no response, he proceeded to the second step by requesting a hearing before the Committee on January 30, 2017. (Compl. ¶¶ 201, 205.) When that request was ignored, McArdle skipped the third step and appealed directly to the CORC. (Compl. ¶ 207.) Judges in this Circuit have consistently found that administrative remedies were not exhausted when an inmate omitted a step in the IGRP process. Albritton v. Morris, 2018 WL 1609526, at *12 (S.D.N.Y. Mar. 29, 2018) ("[T]he grievance process is set up in such a way that any grievance . . . must be appealed past the superintendent, up to CORC, for a final decision."); Gonzalez v. Vargas, 2017 WL 1082460, at *3 (S.D.N.Y. Mar. 22, 2017); Mena v. City of New York, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

However, this Court needs to consider whether McArdle's failure to exhaust may be excused because relief was unavailable to him. McArdle alleges that he never received any response to his grievances and that he "observed hundreds of inmates' grievances in the grievance box . . . for days without being processed by the . . . committee." (Compl. ¶ 233.) Although the Second Circuit has not extensively explored the Ross unavailability exception for administrative dead-ends, a defendant must "introduce[] . . . facts to indicate that prison officials . . . are consistently unwilling to provide relief to aggrieved inmates." Mena, 2016 WL 3948100, at *4 (emphasis added) (quotation marks omitted) (quoting Ross, 136 S. Ct. at 1859). "[U]ntimeliness . . . is not enough to demonstrate the unavailability of an administrative remedy." Mena, 2016 WL 3948100, at *4.

Here, McArdle pleads facts that plausibly suggest that the lack of any response to

6

his grievance was attributable to a larger problem at the facility—a grievance box stuffed with hundreds of unaddressed inmate complaints. And while IGRP allows an inmate to appeal at any stage if he receives no response, Ross is focused on "the real-world workings of prison grievance systems," not whether a remedy is pro forma "on the books." Ross, 136 S. Ct. at 1859. On these facts, this Court cannot conclude that McArdle's failure to exhaust administrative remedies was unexcused.

Construing all inferences in McArdle's favor, the allegations in the Second Amended Complaint raise the issue that administrative relief may have been unavailable in practice. When an inmate has exhausted his remedies for some grievances, but not others, a court may allow some claims and dismiss the rest. Jones, 549 U.S. at 221. Accordingly, this Court addresses the substance of McArdle's allegations relating to his pepper spray and "forced standing" claims.

B. The Pepper Spray and "Forced Standing" Claims

A pretrial detainee "may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29. This test incorporates two components to prove a claim—(1) an "objective" prong showing that the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) a "subjective" prong, described as a "mens rea" requirement, showing that "the officer acted with at least deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29. The subjective prong requires a detainee to show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have

7

known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. Mere negligence will not suffice. Darnell, 849 F.3d at 36.

With respect to the objective prong, judges in this District have found that "the temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' [objective] injury." Holmes, 2018 WL 4211311, at *7 (quoting Lewis v. Clarkstown Police Dep't, 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014)). Further, McArdle has not plausibly alleged the subjective prong. Standing alone, McArdle's allegations that correction officers used pepper spray to de-escalate conflicts in the holding cell are insufficient to infer intentional or reckless behavior. As McArdle acknowledges in his pleading, he was a bystander in a crowded holding cell. (Compl. ¶ 168.) McArdle's allegation that pepper spray use was "reckless and indiscriminate," (Compl. ¶ 145), merely restates the subjective standard. "'[W]ide ranging deference' must be accorded to the actions of prison officials in responding to an inmate confrontation." Perez v. City of New York, 2017 WL 684186, at *2 (E.D.N.Y. Feb. 21, 2017) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). McArdle's allegations suggest that his exposure to pepper spray, while unfortunate, was at most negligent or accidental. Those allegations are insufficient as a matter of law.

McArdle's claims concerning "forced standing" also fail the subjective prong. McArdle attributes his prolonged periods of standing to overcrowding in the holding cell. (Compl. ¶¶ 91, 122, 209.) While McArdle may have been uncomfortable, these allegations do not suggest that officers intentionally forced these conditions upon him or that they "knew, or should have known" that these conditions posed a serious risk to his health. Darnell, 849 F.3d at 30.

C. Excessive Force Claims

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citations omitted). The central concern is "whether the government action was rationally related to a legitimate government action." Edrei v. Maguire, 892 F.3d 525, 536 (2d Cir. 2018) (citation omitted). While liability for reckless use of force remains an open question in this Circuit, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (emphasis added). The plaintiff's claim must demonstrate that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473. Contextual factors bearing on the objective reasonableness of the force include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Edrei, 892 F.3d at 534 (quotation marks omitted) (citing Kingsley, 135 S. Ct. at 2473).

The allegations undergirding McArdle's excessive force claim are indistinguishable from the allegations relating to his conditions of confinement claim. The addition of a conclusory assertion that a correction officer instigated one of the incidents does not save the claim. In view of the deference accorded to correction officers in exigent circumstances, McArdle has not plausibly alleged that the DOC officers' use of the pepper spray was unreasonable. Whitley, 475 U.S. at 321. McArdle's pleading against the individual officers

9

falls far below the demanding "purposeful or knowing" standard for "unreasonable" excessive force. Kingsley, 135 S. Ct. at 2473.

   D. Monell Claims

A plaintiff alleging municipal liability under § 1983 must plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (citation omitted) (quotation mark omitted). It is well settled that a municipality may not be held liable under a respondeat superior theory. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691, 695 (1978). Rather, liability must arise from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 695. A plaintiff may establish such a policy or custom by "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates." Roundtree v. City of New York, 2018 WL 1586473, at *13 (S.D.N.Y. Mar. 28, 2018) (quotation mark omitted) (citing McLennon v. City of New York, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016)). "[W]holly conclusory" accusations originating from "isolated incidents that affected [the plaintiff]" are insufficient. Roundtree, 2018 WL 1586473, at *13. Rather, the pattern of conduct alleged must be "so widespread as to support an inference that it must have been known and tolerated by superiors." Jones v. Town of E. Haven, 691 F.3d 72, 82 (2d Cir. 2012).

McArdle does not allege any specific policy or practice to bolster his claims. He asserts broadly that the Defendants "[were], [had been], or should have been aware" of "long-standing, department-wide customs [and] policies" that denied him and other inmates their constitutional rights. (Compl. ¶ 277.) The Complaint further avers that the Defendants failed to "properly train and/or supervise [their] officers." (Compl. ¶ 276.) McArdle's glancing reference to a half dozen complaints by other inmates and a single newspaper article, (Compl. ¶ 189; Opposition, at 33), does not plead any widespread policy sanctioned by policymakers and imputable to the city, see Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also Holmes, 2018 WL 4211311, at *3 (explaining how allegations that other inmates had suffered similar treatment, combined with another inmate's filed grievance, was not a sufficient pattern of behavior to infer municipal liability).

McArdle's unadorned accusations fail the "rigorous standards of culpability and causation" that apply to municipal liability claims based on a failure to train. Matsusick v. Erie Cty. Water Auth., 757 F.3d 31, 73 (2d Cir. 2014). His conclusory assertions that municipal actors knew about civil rights violations do not amount to a pattern of conduct demonstrating "deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 60 (2011). In fact, McArdle undercuts his claim by citing DOC Policy Directives that promote the conservative use of chemical agents. (Compl. ¶¶ 183, 185, 191.)

"A § 1983 claim against . . . an official sued in his official capacity . . . cannot be sustained unless the plaintiff shows that the violation of [his] federal rights was the result of a municipal custom or policy." Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012). Because McArdle has not established any such pattern, all claims against the individual Defendants in their official capacities are also dismissed. Lore, 670 F.3d at 168.

E.  State Law Tort Claims

As a threshold matter, "federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision." Felder v. Casey, 487 U.S. 131, 151 (1988). McArdle's state law tort claim against the City for intentional infliction of emotional distress is dismissed because he failed to serve a notice of claim. See N.Y. Gen. Mun. Law § 50–e; Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). McArdle's intentional infliction of emotional distress claim against the individual Defendants is deemed abandoned because he failed to respond to Defendants' arguments in opposing this motion. Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted. Having amended his Complaint twice as a result of extensive pre-motion proceedings, this Court dismisses the Second Amended Complaint with prejudice.[1] The Clerk of Court is directed to terminate the motion pending at ECF No. 40 and mark this case as closed.

Dated: October 17, 2018
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[1] See DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 556–57 (S.D.N.Y. 2018) (citation and quotation marks omitted) ("Courts have dismissed claims with prejudice on the basis that the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

12